IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KIRK A POPE, JR, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A.No. |
| | : | |
| ERIC D. SWANSON, individually and in his official capacity as Sussex County Sheriff; and SUSSEX COUNTY, a municipal corporation, | : : : | Jury Trial Demanded |
| | : | |
| Defendants. | : | |

## COMPLAINT

1. More than thirty years ago, the United States Supreme Court held that a newly elected County Sheriff is constitutionally forbidden from firing Deputy Sheriffs because of their political affiliations. In the fall of 2006, retired Green Beret plaintiff Kirk A. Pope, Jr., a Deputy Sheriff in the Sussex County Sheriff's department, exercised his fundamental First Amendment rights and unsuccessfully ran for public office as a Republican against the incumbent State Representative and Democrat Peter Schwartzkopf. At the same time, Schwartzkopf's close friend and fellow Democrat defendant Eric Swanson was elected to the office of Sussex County Sheriff and became plaintiff's new boss. Upon his election, he immediately fired plaintiff, claiming the right to terminate plaintiff because of his political affiliation. Plaintiff now brings this civil action for compensatory and punitive damages and for injunctive relief for violations of his fundamental rights to political association, free speech, belief, petition and vote under the First, Ninth and Fourteenth Amendments of the U.S. Constitution.

## I. JURISDICTION

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), 28 U.S.C. §§ 2201 and 2202, and the First, Ninth and Fourteenth Amendments to the U.S. Constitution. The cause of action arises under 42 U.S.C. § 1983. The claim arose in this judicial district.

## II. THE PARTIES

3. Plaintiff is a citizen of the United States and a resident of Lewes, Delaware. At all times material hereto he was a diligent, honest and loyal employee who always performed his job in an exemplary manner.

4. Defendant Eric D. Swanson ("Swanson"), is the elected Sheriff of Sussex County. He is sued in his individual and official capacities for retaliatory actions which were taken against plaintiff.

5. Defendant Sussex County is a municipal corporation organized under the laws of the State of Delaware.

## III. FACTS GIVING RISE TO THE ACTION

### A. Plaintiff's Background

6. Plaintiff was born on October 7, 1957, in Cheverly, MD, and raised in Landover Hills, MD. He attended high school at Augusta Military Academy, Fort Defiance, VA.

7. Prior to joining the Sheriff's Department, plaintiff was a 22 year veteran of the U.S. Army where he served as a Green Beret in the Special Forces until retiring with a service related injury. His military assignments included the following:

- March 1993 - August 1998 - 1st Special Forces Group (ABN), U.S. Army, Okinawa, Japan, where he served as a Special Forces Assistant Operations/Intelligence Sergeant. During this assignment, he was: (1) a

team member of a Forward Deployed (Outside the Continental U.S. (OCONUS)) Counter Terrorist Assault Force. (Commander in Chief's In-Extreme Force (CIP)); (2) An Instructor for basic and advanced firearms training to both American and foreign soldiers; (3) the Non Commissioned Officer in Charge (NCOIC) and Lead Instructor of the Battalion's Advanced Parachutist (Jump Master) Course; (4) the Company Training Coordinator, tasked with logistics, scheduling and coordinating all company training exercises for a Special Forces Bravo Team with 82+ soldiers, both at home base and in foreign countries.

- December 1988 - March 1993 - 1st Special Forces Group (ABN), U.S. Army, Fort Lewis, Washington, where he served as a Special Forces Assistant Operations/Intelligence Sergeant. During this assignment he was: (1) a Team member of a Counter Terrorist Assault Team; (2) an Instructor for basic and advanced firearms training to both American and foreign soldiers; (3) a Team Training Coordinator, tasked with logistics, scheduling and coordinating team training exercises for a Special Forces Alpha Team with 12 team members, both at home base and in foreign countries.

- January 1988 - December 1988 - Attended and completed the U.S. Army Special Forces Qualification Course, Fort Bragg, NC (Special Forces School - Green Beret).

- March 1986 - December 1987 - B Company, 27th Engineer Company (ABN), Fort Bragg, GA, where he served as a Squad Leader and then Platoon Sergeant of a Combat Engineer Airborne Company. Responsible for the training, welfare and safety of a 12 man squad, then a 48 man platoon.

- November 1985 - March 1986 - Attended the U.S. Army Special Forces Qualification Course, Fort Bragg, NC.

- September 1985 - October 1985 - Attended the U.S. Army Airborne School, Fort Benning, GA, for the Basic Parachutist course.

- June 1983 - September 1985 - 130th Engineer Brigade, U.S. Army, Hanau, West Germany where he served as the Training NCO, tasked with logistics, scheduling and coordinating training for a military company with 200+ soldiers. Additional duties included unit armorer with an arms room containing more than 200 M16 rifles, .45 cal. pistols and M60 machine guns.

- March 1982 - May 1983 - 567th Engineer Company (ADM), Hanau, West Germany where he served as a Fire Team Leader of a 12 man detachment

3

  • whose mission was to train and prepare for combat missions in the European theater utilizing Atomic Demolition Munitions (Tactical Nuclear Landmines).

  • July 1981 - March 1982 - Attended Atomic Demolitions Munitions in Fort Belvoir, VA, and was then assigned to the 66th Engineer Company (ADM), Ford Hood, Texas where he was assigned as a Fire Team Leader of a 12 man detachment whose mission it was to train and prepare for combat missions in the European theater utilizing Atomic Demolition Munitions (Tactical Nuclear Landmines).

  • September 1980 - July 1981 - Military Policeman, Virginia Army National Guard, Staunton, Virginia where he was assigned to a Military Police platoon attached to an infantry Brigade Headquarters. His duties included community policing and patrolling, prisoner processing and transportation, traffic control, physical security and the personal security of the Brigade Commander.

  • September 1976 - July 1979 - Military Policeman, Yuma Proving Grounds, U.S. Army, Yuma Arizona where he was assigned to a Military Police company. His duties included community policing and patrolling, prisoner processing and transportation, traffic control and physical security. He also was a member of the Special Response Team ("SRT") and a defensive driver and military driver's license instructor.

  8. He is a 1977 graduate of the U.S. Army Military Police School in Fort McClellan, Alabama. Since that time he has received extensive military and civilian training in the areas of public safety, first responder, counter-terrorist operations, special weapons, firearms, explosive bomb removal and other special forces tactical training.

  9. Plaintiff's attendance at the Army ADM school required a full and extensive background check which he passed with flying colors, and consequently received Top Secret Security Clearance. His distinguished service in the Army Special Forces (Green Berets) also required a Top Secret Security Clearance.

  10. He has received multiple Meritorious Service Medals, Army Achievement Medals, Certificates of Achievement and Recognition, Letters of Commendation and 5 Good Conduct

Medals for his distinguished Army service.

11. Following his retirement from the U.S. Army, he moved in Lewes, DE in 1998 to be near his family. After trying retirement, he worked at various odd jobs before joining the Sheriff's Office in May 2001.

### B. Plaintiff's Employment as a Sheriff's Deputy.

12. Plaintiff was hired as a Road Deputy in May 2001 by Sheriff Robert Reed.

13. As a Deputy, his job duties required that he: serve civil and criminal process such as warrants, summonses, attachments and subpoenas; take custody of non-incarcerated sentenced defendants; accept prisoners on capias returns from police and criminal justice agencies; transport prisoners to SCI; post notices of Sheriff's sales; impose levies and impound automobiles and other household goods; and enforce evictions. Due to his extensive military background, plaintiff also was the Office firearms instructor.

14. Subsequently, plaintiff took on Internet Technology responsibilities for the Sheriff's Office and received the title of Corporal and a corresponding increase in his salary to reflect these additional responsibilities. In addition to his duties as a Road Deputy, his duties were expanded to include the following: creating and maintaining the Sheriff's Office website; installing computer, communication and emergency equipment in vehicles; streamlining office forms and creating computer databases; and instructing personnel on computer operations and programs.

15. As his performance evaluations from Chief Deputy, Lieutenant Jeff Christopher make clear, plaintiff excelled in his duties, receiving overall evaluations of 'Outstanding' or 'Exceeds Expectations.' He has received various awards and commendations, including the Medal of Merit from the National Sheriff's Association and the Certificate of Service from the

Sussex County Council.

### C. The Ministerial Duties of Deputies.

16. The Sheriff's office in which plaintiff worked was a small one. The management and policymaking ranks consisted of the Sheriff Robert Reed and his Chief Deputy, Lieutenant Jeff Christopher. The Office Staff consisted of the Office Manager Ms. Lynn Kleb, the Civil/Criminal Service specialist Ms. Peggy Pepper and the Receptionist/Dispatcher Ms. Lisa Parker. Lastly, there were the three Road Deputies: plaintiff, Deputy Pat Smith and Deputy Heather Massey.

17. The Deputies are not policymakers in the Sheriff's Office.

18. The Deputies do not report organizationally to the Sheriff or perform advisory functions for him.

19. The Deputies are several levels organizationally below the Sheriff.

20. The Deputies are non-policymaking, nonconfidential government employees.

21. The Deputies do not have broad managerial responsibilities.

22. The Deputies' job duties are ministerial.

23. The Deputies do not act as an advisor or formulate plans for the implementation of broad goals within the Sheriff's Office.

24. The Deputies do not have meaningful input into decision-making concerning the nature and scope of any major government program.

25. Accordingly, a difference in political beliefs would not be highly likely to cause a Deputy to be ineffective in carrying out the duties and responsibilities of the Deputy position.

26. The private political beliefs of the Deputies do not interfere with the discharge of their public ministerial duties.

27. Political party affiliation or political beliefs are not appropriate requirements for the effective performance of the position of Deputy in the Sheriff's Office.

28. Political party affiliation or political beliefs are not highly likely to cause any Deputy to be ineffective in carrying out his or her ministerial duties in the Sheriff's Office.

29. Deputies do not have meaningful input into decision making concerning the nature and scope of major Sheriff's Office programs. Rather, the former Sheriff and his Lieutenant and Chief Deputy Christopher made all meaningful decisions as to the nature and scope of all major Sheriff's Office programs.

30. The position of Deputy can be effectively performed by someone with political beliefs and associations differing from those of the Sheriff.

### D. Plaintiff Decides to Run for Political Office.

31. In August 2006, plaintiff was asked by the Republican Party to run for State Representative against the incumbent Democrat Peter Schwartzkopf, a retired state trooper.

32. In September 2006, plaintiff agreed to do so. Thereafter, he began to actively campaign for public office during his off duty hours and publically challenged Representative Schwartzkopf on various political issues in the campaign. Defendant was aware of this and it angered and antagonized him

33. On election day, plaintiff cast his vote for himself. Defendant also was aware of this and it angered and antagonized him.

34. Plaintiff ultimately lost the election to Representative Schwartzkopf.

35. At the same time, the longtime Sussex County Sheriff, Republican Robert Reed, was being challenged for his position by another retired state trooper and friend of Representative Schwartzkopf, defendant Swanson, also a Democrat.

36. Rep. Schwartzkopf recruited Swanson to run for this position and actively supported him in his campaign.

37. Plaintiff supported and was identified with Sheriff Reed in the general election. For example, plaintiff put a campaign sign for Sheriff Reed on his front lawn. Plaintiff also cast his vote in support of Sheriff Reed. Defendant was aware of this and it angered and antagonized him.

38. Defendant Swanson ultimately defeated Sheriff Reed, becoming the new Sussex County Sheriff.

### E. Revenge and Retaliation by Defendant

39. Defendant Swanson then deliberately set out upon a course of conduct designed to retaliate against plaintiff because of his protected political activity and to dismiss him from the Sheriff's Office at the cost of his career and livelihood.

40. After the election, on Return Day in Georgetown, plaintiff approach newly elected Sheriff Swanson and extended his hand, stating, "congratulations Sheriff." Swanson then turned to plaintiff, gave him a look of utter disdain, contempt and disgust, begrudgingly and briefly shook his hand and then quickly turned away.

41. That same day, Swanson publically announced his intent to clean house in the Sheriff's Office.

42. Similarly, shortly before his retirement, outgoing Sussex County Administrator Robert Stickles came into the Sheriff's Office to say goodbye to various employees. As he was leaving, he turned to plaintiff and stated, "Good luck, you're going to need it."

43. On December 15th, Swanson asked plaintiff to come into his office. His demeanor and attitude were openly hostile and condescending towards plaintiff. He told plaintiff that

8

"there will be changes here" because "I know you were loyal to" Sheriff Reed. Defendant Swanson then questioned plaintiff's honor, loyalty and integrity, including his twenty-two dedicated years of service to our Country. Swanson rolled his eyes, made faces, sighed loudly and mocked him as plaintiff attempted to defend himself. Three days later, plaintiff was given a backdated letter announcing his firing, effective January 1, 2007.

44. Plaintiff promptly raised the issue of his firing with County Personnel Director Dennis Cordrey, who told plaintiff that he should have known that this would happen. Other high ranking government officials in Sussex County have told him the same.

45. One high ranking government official subsequently told plaintiff that he had been blackballed by Rep. Schwartkopf who had "put the word out" against him and had even gone to Governor Minner to ensure that plaintiff's life would be made difficult.

46. Since that time, numerous other individuals have told plaintiff that if he had not run for office, he would not have been fired.

47. Swanson has subsequently told other Sheriff's Office employees that they should vote "better" by voting Democrat, strongly implying that he was making Democratic political affiliation a job requirement for working in the Sheriff's Office.

### F. Damages

48. As a direct and proximate result of the actions of the defendants as detailed herein, plaintiff has suffered lost wages, earnings and benefits, he will suffer diminished earning capacity and receive less pension and other benefits now and upon his retirement, decreased employment and earnings opportunities, and other pecuniary losses, emotional pain, suffering, disappointment, anger, inconvenience, mental anguish, loss of enjoyment of life, mental and physical pain, anguish, humiliation, embarrassment, injury to reputation, loss of training

opportunities, and other non-pecuniary losses and injury.

## IV. ALLEGATIONS REGARDING THE DEFENDANTS' CONDUCT

49. The individual defendant's actions violated clearly established federal constitutional rights of which any official would have known, including three decades of Third Circuit and Supreme Court case law prohibiting retaliation against public employees for their political affiliation or for their protected speech.

50. At all times material hereto the individual defendant participated in, authorized, and sanctioned the federal constitutional deprivations described above.

51. At all times material hereto the individual defendant and his agents were acting under color of law. The federal constitutional deprivations described herein are fairly attributable to the State.

52. The actions of the defendant and his agents or employees were deliberately, intentionally, willfully, purposefully, and knowingly done in violation of federal constitutional rights and because of the exercise of those rights.

53. The defendant either knew or showed a negligent or reckless disregard for the matter of whether his conduct violated federal constitutional rights.

54. His actions were outrageous and taken with evil motive, in bad faith, out of personal animus and without any reasonable grounds to support them.

55. His actions were wanton and malicious or taken with reckless indifference to federal constitutional rights.

56. The exercise of rights under the U.S. Constitution made a difference in all actions adverse to plaintiff.

57. The exercise of these rights was a motivating, substantial or determinative factor in

all actions adverse to plaintiff.

58. The defendant did not reasonably believe that the actions he took were necessary to accomplish any legitimate governmental purpose.

59. The defendant's actions were motivated by bias, bad faith, and improper motive.

60. The defendant's actions constitute an abuse of governmental power.

61. The defendant's actions do not further any narrowly drawn important, substantial or compelling governmental interest.

62. The defendant's actions are not so reasonable as to further any governmental interest asserted and do not closely fit the goal of serving those governmental interests.

63. The actions of the defendant were taken pursuant to Sussex County policies, customs and/or practices and were authorized, sanctioned, implemented, permitted, and ratified by officials functioning at a policy making level.

64. By the policy, custom, and/or practice of officials functioning at a policy making level, the County defendant has retaliated against plaintiff. That policy, custom and/or practice caused a deprivation of constitutional rights. Additionally, the County defendant must have known, or reasonably should have realized, from the nature of its conduct that its policy, custom and/or practice was causing or was likely to cause violations of federal constitutional rights.

### COUNT I (First Amendment - Political Association or Belief Retaliation/Discrimination)

65. Plaintiff repeats and realleges paragraphs 1-64 set out above.

66. Plaintiff was fired from the Sussex County Sheriff's Office, a public employer. The position of Road Deputy and Corporal does not require a political affiliation or belief. Defendants are unable to prove that political affiliation or belief are appropriate requirements for

this position.

67. The individual defendant was aware of plaintiff's protected belief and association and it antagonized him.

68. There is a causal link between First Amendment protected activity regarding plaintiff's political belief and association and the adverse actions of firing plaintiff. This is demonstrated by:

    (a)    the temporal proximity of events, for example, plaintiff was fired just weeks after the general election where he challenged defendant's close friend,

    (b)    circumstantial evidence of a pattern of antagonism following protected activity, such as defendant's openly hostile demeanor and attitude towards plaintiff at Return Day and in the Sheriff's Office,

    (c)    personal knowledge and awareness of protected activity by the individual defendant, such as Swanson's actual knowledge that plaintiff was campaigning for Representative and was supporting Sheriff Reed's candidacy,

    (d)    the fact that plaintiff was more qualified for his position than his replacement who is barred from driving county vehicles because of his poor driving record, which causes significant problems given the nature of a Deputy's job duties,

    (e)    any explanations given for firing plaintiff are unworthy of credence,

    (f)    direct evidence from defendant's own mouth that he was firing plaintiff because he was loyal to Sheriff Reed, as well as his statements that Sheriff's Office employees would be better off if they vote Democrat,

    (g)    the circumstantial evidence from various government officials who have learned that Rep. Schwartzkopf blackballed plaintiff because he ran against him,

    (h)    the evidence as a whole.

69. First Amendment protected political belief and association were a substantial or motivating factor in the decision to fire plaintiff. The natural probative force of the evidence

demonstrates causation.

70. The totality of retaliatory adverse action taken by defendants against plaintiff is sufficient to deter any person of ordinary firmness from exercising their First Amendment rights of political belief and association.

71. Any reasonable person of ordinary firmness would be deterred from exercising their First Amendment rights of political belief and association when threatened with being fired.

72. The defendants took action adverse to plaintiff as a direct and proximate result of and in retaliation for plaintiff's First Amendment protected political belief and association.  There is a temporal and causal relationship between plaintiff's aforementioned protected belief and association and adverse employment action.  First Amendment protected activity was a substantial or motivating factor in the adverse employment action.

73. Plaintiff's constitutional rights to freedom of political belief and association have been denied under the First Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

**COUNT II  (First Amendment - Free Speech Public Employee Retaliation)**

74. Plaintiff repeats and realleges paragraphs 1-73 set out above.

75. Plaintiff, in his private capacity as a citizen, spoke out on issues of public concern under the First Amendment, including but not limited to campaign issues vital to the vibrancy of our representative democracy.

76. None of this speech was required by his job duties or responsibilities as a Deputy in the Sheriff's Office.

77. By its content, form and context, at all times plaintiff spoke out about matters of public concern.

78. All of plaintiff's speech was non-disruptive of any interest of his employer and it was

on matters of concern to the public at large. His speech related to matters of political concern to the community.

79. The individual defendant was aware of plaintiff's protected speech and it antagonized him.

80. There is a causal link between First Amendment protected activity on matters of public concern and the adverse action of firing plaintiff.

81. First Amendment protected activity was a substantial or motivating factor in plaintiff's discharge. The natural probative force of the evidence demonstrates causation.

82. The totality of retaliatory adverse action taken by defendants against plaintiff is sufficient to deter any person of ordinary firmness from exercising their First Amendment right to freedom of speech.

83. Any reasonable person of ordinary firmness would be deterred from exercising their First Amendment right to freedom of speech when threatened with being fired.

84. The defendants took action adverse to plaintiff as a direct and proximate result of and in retaliation for plaintiff's First Amendment protected speech on matters of public concern. There is a temporal and causal relationship between plaintiff's aforementioned protected speech and conduct, and adverse employment action. First Amendment protected activity was a substantial or motivating factor in the adverse employment action.

85. Plaintiff's constitutional right to freedom of speech has been denied under the First Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

**COUNT III (First, Ninth and Fourteenth Amendments - Fundamental Right to Vote - Absolute Right)**

86. Plaintiff repeats and realleges paragraphs 1-85 set out above.

87. Plaintiff voted for himself and Sheriff Reed and against Rep. Schwartzkopf and defendant Swanson in the November 2006 election.

88. The individual defendant was aware of plaintiff's exercise of his right to vote, it antagonized him and it was either the sole, motivating, substantial, or determinative cause for discharging plaintiff.

89. Defendants have retaliated against plaintiff for following his conscience and exercising his fundamental right to vote for a candidate which his conscience dictated.

90. Defendants also have retaliated against plaintiff and conditioned his continued employment upon plaintiff surrendering his fundamental right to vote for a candidate of his own choosing.

91. By conditioning employment upon surrendering his fundamental right to vote, defendants seek to force plaintiff to choose between following the dictates of his conscience and his continued employment.

92. In so doing, defendants force plaintiff to choose between his continued employment and his fundamental right to vote.

93. Defendants' actions give rise to an unconstitutional condition since defendants seek to deny plaintiff the privilege of continued employment on the basis of the exercise of his constitutionally protected fundamental right to vote.

94. Plaintiff is being penalized and inhibited from exercising his constitutionally protected fundamental right to vote for a candidate of his own, and not of defendant Swanson or Rep. Schwartzkopf's own choosing.

95. By conditioning his continued employment upon a change in his voting habits and political beliefs, defendants seek to produce a result indirectly which they could not directly

constitutionally command.

96. In this case the fundamental right to vote is absolute and it has been illegally infringed.

97. Plaintiff's fundamental right to vote has been denied under the First, Ninth and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983.

>**Wherefore**, plaintiff prays that the Court:
>
>(A) Enter judgment against the individual defendant.
>
>(B) Enter a declaratory judgment declaring the acts of the defendants to be a violation of plaintiff's constitutional rights.
>
>(C) Enter a judgment against the defendants, jointly and severally, for compensatory damages, including lost wages, back pay, pension and other benefits, for future or front pay, loss of earning capacity, emotional distress, humiliation, embarrassment, and injury to reputation.
>
>(D) Enter a separate judgment against the individual defendant for punitive damages.
>
>(E) Issue a mandatory injunction directing the present Sheriff to reinstate plaintiff to the position of Deputy Sheriff and Corporal in the Sheriff's Office.
>
>(F) Award front pay until plaintiff can be reinstated.
>
>(G) Issue a reparative injunction directing that upon retirement, plaintiff's pension and other benefits be calculated as if he had been continuously employed by the Sheriff's Office.
>
>(H) Issue a mandatory injunction ending the continuing illegal actions of defendants and barring them from considering protected speech, belief, association, political affiliation or the right to vote for the candidate of one's choice, whenever considering the discharge, promotion or transfer requests of any employee of the Sheriff's Office.
>
>(I) Issue a reparative injunction directing that the individual defendant place a signed document in plaintiff's personnel file indicating that he was illegally fired from his position by Sheriff Swanson and apologizing to plaintiff for violating his constitutional rights.

(J) Enjoin the defendants from retaliating against plaintiff.

(K) Award plaintiff attorney's fees, costs and pre and post judgment interest for this action.

(L) Require such other and further relief as the Court deems just and proper under the circumstances.

**THE NEUBERGER FIRM, P.A.**


 /s/ Thomas S. Neuberger
**THOMAS S. NEUBERGER, ESQUIRE (#243)**
**STEPHEN J. NEUBERGER, ESQUIRE (#4440)**
Two East Seventh Street, Suite 302
Wilmington, DE  19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: October 18, 2007            Attorneys for Plaintiff

Pope \ Pleadings \ Complaint - final

℅JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Kirk A. Pope

**DEFENDANTS**
Eric D. Swanson, individually and in his official capacity as Sussex County Sheriff; and Sussex County, a municipal corporation

**(b)** County of Residence of First Listed Plaintiff  Sussex County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Sussex County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Thomas S. Neuberger, Esq.
The Neuberger Firm, P.A.
2 E. 7th St., Ste. 392, Wilmington, DE 19801
(302) 655-0582

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability |  | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability |  |  | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise |  |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** |  | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights |  |  | ☐ 950 Constitutionality of State Statutes |
|  | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition |  |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause: Civil action for damages for violations of Plaintiff's fundamental rights to political association, free speech, belief, petition and vote under the First, Ninth and Fourteenth Amendments of the U.S. Constitution.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE None    DOCKET NUMBER

DATE: October 17, 2007

SIGNATURE OF ATTORNEY OF RECORD: *Thomas S. Neuberger*

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

JS 44 Reverse (Rev. 11/04)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. 0 7 - 6 5 2

## ACKNOWLEDGMENT OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF 2 COPIES OF AO FORM 85.

10/18/07
(Date forms issued)

x Cheryl Hertzog
(Signature of Party or their Representative)

x Cheryl Hertzog
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action