IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KIRK A. POPE, JR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) C.A. No. 07-652-GMS |
| | ) |
| ERIC D. SWANSON, individually and in | ) |
| his official capacity as Sussex County | ) |
| Sheriff; and SUSSEX COUNTY, | ) |
| a municipal corporation, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

**I.   INTRODUCTION**

On October 18, 2007, Kirk A. Pope, Jr. ("Pope") filed a complaint against Sussex County Sheriff, Eric D. Swanson ("Swanson"), in his individual and official capacities, and Sussex County, a municipal corporation. (D.I. 1.) Pope alleges violations of his First Amendment rights to political association and free speech as a public employee, and violations of his right to vote under the First, Ninth and Fourteenth Amendments. (D.I. 1.) Pope was hired as Deputy Sheriff at the Sussex County Sheriff's Office in May 2001, under former Sussex County Sheriff Robert Reed ("Reed"). (D.I. 54 at 1, 3.) Reed gave Pope the title of Corporal, due to the additional duties required by his job, including information technology duties.[1] (Id. at 3.) In August 2006, Pope ran for State Representative for the Republican Party against Democratic candidate, Peter Schwartzkopf ("Schwartzkopf"). (Id. at 5.) During that same time, Swanson ran as the

---

[1] Pope's additional information technology duties included creating and maintaining the Sheriff's Office website, installing computer, communication and emergency equipment in vehicles, streamlining office forms and creating computer databases, and instructing personnel on computer operations and programs. (D.I. 1 ¶ 14.)

Democratic candidate for Sussex County Sheriff against Reed, the Republican candidate. (Id.) Pope lost the State Representative race, while Swanson won the Sussex County Sheriff race. (Id. at 5-6.) In December 2006, Swanson sent Pope a letter of termination, explaining to Pope that he wished to place another person in the Corporal position. (D.I. 57 at A28.) Pope claims that Swanson terminated him in retaliation for his running against Schwartzkopf for State Representative, and for his support of Reed in the Sheriff's race. (Id. at 1.) Presently before the court are the parties' cross motions for summary judgment. (D.I. 52, 55.) For the reasons that follow, the court will grant in part and deny in part both parties' motions.

## II. DISCUSSION

A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Biener v. Calio*, 361 F.3d 206 (3d Cir. 2004). In reviewing summary judgment decisions, the Third Circuit views all evidence and draws all inferences in the light most favorable to the non-movant, affirming if no reasonable jury could find for the non-movant. *See Whiteland Woods, L.P. v. Twp. of West Whiteland*, 193 F.3d 177, 180 (3d Cir.1999). Thus, a trial court should only grant summary judgment if it determines that no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In addition, the Third Circuit has advised that "[c]ases that turn crucially on the credibility of witnesses' testimony in particular should not be resolved on summary judgment." *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999) (citing *Boyle v. County of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998)).

Both Pope and Swanson have filed motions for summary judgment on all claims. With respect to his political association claim, Pope argues that he was fired from his position as Sussex County Deputy in retaliation for exercising his First Amendment rights to engage in political affiliation and activities – more specifically, his support of Reed and candidacy for State Representative. (D.I. 54 at 1.) Conversely, Swanson contends that he terminated Pope for several reasons unrelated to his political affiliation, including: (1) Pope's failure to comply with standard protocol that required him to carry an office-issued firearm instead of his personal firearm, and (2) Swanson's desire to transfer control of information technology from the Sheriff's office to the County.

The Supreme Court has held that the First Amendment protects public employees from discharge and other hiring decisions conditioned on political affiliation, unless the government can demonstrate that party affiliation is a proper requirement for the position. *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 75 (1990). Adhering to this principle, the Third Circuit employs a three-part test to determine whether a plaintiff has established a claim of discrimination based on political patronage or affiliation in violation of the First Amendment. To make out a *prima facie* case, a plaintiff must show that "(1) he was employed at a public agency in a position that does not require political affiliation, (2) he was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007) (citing *Stephens v. Kerrigan*, 122 F.3d 171, 176 (3d Cir. 1997)). Once a plaintiff makes this showing, a defendant may "avoid a finding of liability by proving by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

After having considered the parties' submissions, the court concludes that it will grant in part and deny in part Pope's motion for summary judgment on his political association claim, and deny the defendants' motion on this same claim. More specifically, the court will grant Pope's request for summary judgment on the first two prongs of his *prima facie* case, because the defendants fail to address Pope's arguments regarding these prongs. Put differently, the defendants failure to address Pope's arguments demonstrates that they concede that Pope was employed at a public agency in a position that does not require political affiliation and that he was engaged in constitutionally protected conduct.

With respect to Pope's request on the third prong of his *prima facie* case, the court concludes that genuine issues of material fact exist precluding the entry of summary judgment. The court reaches the same conclusion with respect to the defendants' cross motion on this issue. In arguing that he is entitled to summary judgment on causation, Pope cites to his own testimony, noting that Swanson admitted in an interview with Pope that he fired Pope for being "loyal" to the previous Sheriff, Reed. (Id. at 18.) Pope also points to Swanson's letter of termination, which predated Swanson's interview with Pope and Reed's other staff members.[2] To the contrary, Swanson argues that his reasons for terminating Pope were not political, citing to his own testimony that "political affiliation played no part in the decision to terminate [p]laintiff." (D.I. 61 at 8.) Swanson also cites to the testimony of other witnesses, and the fact that he did not terminate two of Reed's political allies from their positions in the Sheriff's office, including his campaign manager. (get citation) As

---

[2] The "backdated" termination letter to which Pope refers is a matter of dispute. While the letter is dated December 14, 2006, four days before it was given to Pope and one day before Swanson met with Pope to discuss his job duties and qualifications (D.I. 53 at A448), Swanson claims that the date on the letter was the result of a "clerical error." (D.I. 63 at 8.) Whether the ultimate factfinder believes Swanson's or Pope's testimony, however, is a matter of credibility, which is inappropriate for the court to determine at the summary judgment phase.

both parties note in their respective briefs, whether or not a plaintiff has proven that his political association was the substantial or motivating factor in the relevant employment decision – here, Pope's termination – ordinarily is a question of fact for the jury. *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001). In the present case, the court concludes that summary judgment is not appropriate for either party, because a factfinder evaluating both the record evidence and credibility of the witnesses could reasonably find for either Pope or Swanson. In other words, genuine issues of material fact exist regarding whether Pope's political affiliation was a substantial or motivating factor in Swanson's decision to terminate him. Thus, the court will deny both parties' motions for summary judgment as to this aspect of Pope's political association claim.[3]

Finally, Swanson moves for summary judgment on Pope's claim that Swanson violated his right to vote under the First, Ninth and Fourteenth Amendments. Right to vote claims under the First and Fourteenth Amendments traditionally have been brought under circumstances where a state actor is denying or burdening a citizen's ability to vote or run in an election. *See Williams v. Rhodes*, 393 U.S. 23 (1968) (holding that Ohio election laws that made it virtually impossible for a new political party to be placed on state ballots to choose electors pledged to particular candidates for Presidency and Vice-Presidency of the United States resulted in a denial of equal protection of the laws); *see*

---

[3] Pope also argues that the defendants' have waived their *Mount Healthy* defense that they would have taken the same employment action in the absence of the protected activity. *See* 429 U.S. at 287 (setting forth defense). The court disagrees, as the defendants' first amended answer and affirmative defenses states:

> Notwithstanding Defendants' general denials and the other affirmative defenses stated herein, to the extent Plaintiff establishes that any First Amendment–protected activity was a determinative factor in any employment decision challenge herein, *Defendants would have taken the same action in the absence of such impermissible determinative factors*.

(D.I. 19 ¶ 102) (emphasis added).

5

*also Council of Alternative Political Parties v. Hooks*, 179 F.3d 64 (3d Cir. 1999) (determining the constitutionality of provisions under New Jersey election law on citizen's right to vote). Additionally, "the Ninth Amendment standing alone does not confer substantive rights for purposes of pursuing a constitutional claim." *Nicolette v. Caruso*, 315 F. Supp. 2d 710, 718 (W.D. Pa. 2003) (citations omitted). In the present case, Pope bases his right to vote claim on the same set of facts as his political association retaliation claim, and does not allege that Swanson infringed upon his actual ability to vote or run for office. Indeed, Swanson's conduct that is the subject of Pope's allegations post-dates the Sheriff and State Representative elections. Accordingly, the court concludes as a matter of law that Swanson's conduct did not interfere with, deny, or burden Pope's ability to run as a candidate for State Representative or vote in either the election for State Representative or Sheriff.[4] Thus, the court will grant the defendants' motion for summary judgment as to the plaintiff's right to vote claim.

---

[4] Pope cites to *Riddell v. Gordon*, C.A. No. 04-1201-MPT, 2008 WL 4766952 (D. Del. 2008) to support his right to vote claim, stating that it is a "precedent directly on point." (D.I. 60 at 17.) The court disagrees for several reasons. First, *Riddell* concerned a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, not a summary judgment motion. In addition, within *Riddell*, Magistrate Judge Thynge refers to the plaintiff's right to vote claim, stating, "[The plaintiff] is not alleging interference with her right to vote, but retaliation for how she voted. Since this count falls under the same retaliation umbrella of the prior counts, only conduct, time, place and persons responsible are required to be pled." *Riddell*, 2008 WL 4766952, at *3. Thus, Judge Thynge recognized, as does this court, that while the plaintiff's claim was labeled a fundamental right to vote claim, it really did not implicate concerns with a burden on the voting process or interference with the right to vote but, instead, raised the same issues as her political association claim. Moreover, the language Pope cites from *Riddell* is not directly on point, because it appears in the context of Judge Thynge's discussion regarding the defendant's qualified immunity defense. *Id.* at *5. As Judge Thynge states, "Voting is such a fundamental right that attempts to interfere with it through adverse employment action is an obvious violation." *Id.* Again, however, Judge Thynge is referring to the right of a citizens to have a voice in elections. *Id.* (quoting *Williams v. Rhodes*, 393 U.S. 23, 31 (1968)) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined."). As discussed above, the court concludes that Swanson's conduct did not interfere with Pope's fundamental right to vote.

Therefore, IT IS HEREBY ORDERED that:

1. The plaintiff's Motion for Summary Judgment (D.I. 52) is GRANTED in part and DENIED in part. The motion is GRANTED in that the plaintiff has established the first two prongs of his *prima facie* case of discrimination/retaliation based on political association. The motion is DENIED in all other respects.

2. The defendants' Motion for Summary Judgment (D.I. 55) is GRANTED in part and DENIED in part. The motion is GRANTED with respect to the plaintiff's right to vote claim. The motion is DENIED in all other respects.

Dated: August 10, 2009

_____
CHIEF, UNITED STATES DISTRICT JUDGE